## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

JOHN C. DAVIS,                                  )
                                               )
                              Plaintiff,        )
v.                                             )          Case No. CIV-06-229-HE
                                               )
OKLAHOMA DEPARTMENT OF                          )
CORRECTIONS; JUSTIN JONES,                      )
DIRECTOR; RANDALL WORKMAN,                      )
WARDEN; CAPTAIN DAVIS; JOSH LEE,                )
LIEUTENANT; SERGEANT DUNCAN;                    )
SERGEANT RANELLS; LABORATORY                    )
CORPORATION OF AMERICA;                         )
ROSE MCNUTT, NURSE,                             )
                                               )
                              Defendants.       )

## REPORT AND RECOMMENDATION

Plaintiff, a state prisoner proceeding *pro se* and *in forma pauperis*, brings this action

pursuant to 42 U.S.C. § 1983[1] alleging violation of his constitutional rights.  *See* Second

Amended Complaint [Doc. #36].  This matter has been referred for initial proceedings

consistent with 28 U.S.C. § 636(b)(1)(B) and (C).  The Oklahoma Department of Corrections

(DOC) has filed the court-ordered Special Report [Doc. #51].  Defendants Jones, Davis,

Ranells, Workman, Lee, Duncan, and DOC (DOC Defendants) have filed a Motion to

Dismiss (DOC Defendants' Motion) [Doc. #52].  And Defendant Laboratory Corporation of

America (LabCorp) has sought to join the DOC Defendants' Motion.  *See* Doc. #59.  Plaintiff

has responded to the DOC Defendants' Motion [Doc. #60] and to LabCorp's Motion  [Doc.

---

[1]Plaintiff incorrectly states that the jurisdictional underpinnings of his case rest on *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

#61].  Also pending are Plaintiff's Motion for Injunction [Doc. #3], Plaintiff's Motion for

Default Judgment as to Defendants Jones and McNutt [Doc. #41], Plaintiff's Motion for

Default Judgment as to LabCorp [Doc. #55], and Plaintiff's Motion to Reconsider the Court's

prior order denying his application for appointment of counsel [Doc. #56].  For the reasons

set forth below, it is recommended that the DOC Defendants' Motion to Dismiss be granted

in part and denied in part, that Defendant LabCorp's motion to join the DOC Defendants'

Motion to Dismiss be denied, that Plaintiff's Motion for Injunction be denied, that both of

Plaintiff's motions for default be denied, and that Plaintiff's Motion to Reconsider be denied.

## I.    **Background and Claims Presented**

On September 1, 2005, Defendant Rose McNutt[2] visited Plaintiff at the Lexington

Assessment and Reception Center (LARC) for the purpose of collecting samples of his DNA

to be used in a paternity test to be conducted by Defendant LabCorp pursuant to the order of

an administrative law judge for the Oklahoma Department of Human Services (DHS).

According to Plaintiff, the visit quickly devolved into a situation during which he was

confronted by prison guards who used force and threat of force to subdue him while Ms.

McNutt obtained samples of his saliva:

> DOC officers permitted Ms. McNutt to enter the controlled environment
> through the security doors and Ms. McNutt was assisted by one, Sgt. Duncan,

---

[2]As discussed in further detail below, Ms. McNutt has not been served.  It appears that Ms. McNutt was acting as an agent for some person or entity, but the identity of her principal is not clear.  When she signed the Visitor's Register, Ms. McNutt wrote "LabCorp" under the column where visitors are to identify their "Firm."  Special Report Attachment 2.  Plaintiff identifies Ms. McNutt simply as a "nurse."  In its Answer to Plaintiff's Second Amended Complaint, LabCorp denies that Ms. McNutt is or ever was an employee of LabCorp.  *See* Doc. #57 at 2.

into the secured visiting room where [Plaintiff] was being detained for this test. Upon [Plaintiff's] being asked to submit to the test[,] [Plaintiff] refused, per his State and Federal Right to refuse, such a test. [Plaintiff] was asked to sign a "Refusal Form" which [he] also refused to do.  Rose McNutt then told Sgt. Duncan to sign his name to the refusal form. [Plaintiff] told Duncan that he will seek judicial relief if DOC or Sgt. Duncan interfere(s) with ongoing legal issues in which DOC policy and State Law strictly forbid DOC or it's [sic] officers from assisting, offering legal advice, or interfering with a case currently in litigation.

Duncan then contacted his supervisor Lt. Lee; who in turn, contacted Capt. Davis, who contacted Warden Randall Workman, whom [sic] contacted Oklahoma City DOC headquarters.  DOC headquarters gave the approval to "take the test by any means necessary" because it was represented to the headquarters that Lexington officials had a "Court Order to take the test."

Sgt. Ranells, Sgt. Duncan, Lt. Josh Lee, Captain Davis and Rose McNutt actively restrained Plaintiff Davis using unecessary force and restraint by way of handcuffs and physical force to obtain this sample against [Plaintiff's] pleading, begging, verbal, and physicial non-compliance to refuse the test in which [Plaintiff] had a legal right.  Therefore, [Plaintiff's] Constitutional Rights were violated along with State and Federal Law.

Second Amended Complaint at 3 ¶ C.1 Nature of Case.

The factual allegations underlying Counts 1 through 14 of Plaintiff's Second Amended Complaint are directly related to the above-described incident.  In these counts, Plaintiff posits various legal theories, some based on state law and some based on federal law.  In Count 15, Plaintiff alleges that prison officials violated his constitutional rights by opening legal correspondence from this Court and placing the opened mail in the crack of his cell door.  In Count 16, Plaintiff alleges that  Defendant Workman and his staff have hindered his ability to access the courts by interfering with his attempts to exhaust his administrative remedies.

III.   **Plaintiff's Motion for Injunction**

On the same day that he filed his initial complaint, Plaintiff filed a Motion for Injunction Against Retaliatory Actions (Motion for Emergency Victims Protection Order) [Doc. #3].[3] Plaintiff asks this Court to enter an order preventing the DOC Defendants from retaliating against him for filing this action. Specifically, Plaintiff seeks a court order stating that the DOC cannot transfer him to a different facility. The remedy Plaintiff seeks is extraordinary and drastic. *See Lueker v. First National Bank of Boston (Guernsey) Limited*, 82 F.3d 334, 337 (10th Cir. 1996). The purpose of a temporary restraining order is "to preserve the status quo pending a final determination of the rights of the parties." *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980).

To qualify for this remedy, the movant must satisfy four elements: (1) a substantial likelihood that he will prevail on the merits; (2) irreparable harm unless the restraining order is issued; (3) greater harm to the applicant than the adversary's harm resulting from issuance of a temporary restraining order; and (4) the absence of an adverse impact on the public interest. *See Thomas v. Carson*, No. 01-3276, 30 Fed. Appx. 770, 772 (10th Cir. Jan. 31, 2002) (unpublished op.). When a federal court is considering a motion for injunctive relief related to the conditions of a prisoner's confinement, the court must give substantial weight to the adverse impact on public policy:

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an

---

[3]The relief Plaintiff's seeks is actually that of a temporary restraining order under Fed. R. Civ. P. 65(b).

order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief[.]

18 U.S.C. § 3626(a)(2). A restraining order forbidding officials from moving or transferring

Plaintiff would interfere with prison management. In *Turner v. Safley*, 482 U.S. 78 (1987)

the Supreme Court stated:

> Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint.

*Id.* at 84-85. Because this Court must give "substantial weight" to the possibility that the

requested injunctive relief would have an adverse effect on public policy, consideration of

the fourth factor alone would counsel this Court to refrain from granting the injunctive relief

Plaintiff requests. *See Johnson v. Saffle*, No. 99-6148, 2000 WL 130726 at *2 (10th Cir. Feb.

4, 2000) (unpublished op.) (affirming the denial of a temporary restraining order in part

"because the relief requested was not consistent with the public interest"). Additionally,

however, Plaintiff's belief that he may be subjected to future transfer is not sufficient to

establish that he is in danger of irreparable harm. *See id.* (affirming the denial of a temporary

restraining order in part "because plaintiff had failed to establish a threat of irreparable

harm"). Moreover, prisoners enjoy no constitutional right to placement in any particular

penal institution. *See Olim v. Wakinekona*, 461 U.S. 238, 244-248 (1983); *Meachum v.*

*Fano*, 427 U.S. 215, 225-228 (1976); *see also Montez v. McKinna*, 208 F.3d 862, 865-866 (10th Cir. 2000).

In sum, the injunctive relief Plaintiff requests is not consistent with public policy, and Plaintiff shows neither a likelihood of success on the merits nor irreparable injury with respect to his allegations regarding possible retaliatory transfer. Thus, Plaintiff is not entitled to the injunctive relief he seeks.

IV.   **Plaintiff's Motion to Reconsider Denial of Motion to Appoint Counsel**

Title 28 of the United States Code §1915(e)(1) grants the district courts broad discretion to request an attorney to represent an indigent litigant in a civil proceeding. *See Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). In exercising this discretion, the Court must consider a number of factors, including: (1) the merits of the litigant's claim, (2) the nature of the factual issues involved, (3) the litigant's ability to present his claims and (4) the complexity of the legal issues raised. *Rucks v. Boergermann*, 57 F.3d 978 (10th Cir. 1995).

Having given careful consideration to the circumstances of Plaintiff's case bearing on the need for counsel, it is recommended that Plaintiff's motion to reconsider the Court's prior decision be denied. The issues raised in this action are not complex. Plaintiff has demonstrated his ability to use the federal rules of civil procedure, present his claims to this Court and respond to matters submitted by other parties. Moreover, the record does not disclose any reason Plaintiff could not, if needed, discover relevant information using discovery procedures such as written interrogatories, requests for admissions and requests

for production of documents, available under the federal rules of civil procedure.  It is therefore recommended that Plaintiff's Motion to Reconsider be denied, without prejudice to Plaintiff's ability to renew his request for appointment of counsel under appropriate circumstances at some later time in these proceedings.

## V.   **Plaintiff's Motions for Default Judgment**

Plaintiff has moved for default judgment against Defendants Jones and McNutt [Doc. #41] and against Defendant LabCorp [Doc. #55].  Both motions should be denied.

### A.   **Defendant Jones**

Plaintiff states that Defendant Jones was issued summons in this case on April 25, 2006, and that as of July 20, 2006, the date upon which Plaintiff's Motion was filed, counsel had not entered an appearance on Jones' behalf.  Defendant Jones replied to Plaintiff's Motion and counsel entered an appearance on Jones' behalf on July 21, 2006.  Defendant Jones states that his failure to timely enter an appearance was caused by counsel's misunderstanding that Plaintiff had named Jones as an individual Defendant.  Defendant Jones further states that his failure to timely enter an appearance was not willful and was not done in bad faith.

Rule 6(b)(2) of the Federal Rules of Civil Procedure grants federal courts the discretion to admit an untimely filing if the failure to timely act was the result of "excusable neglect."  Fed.R.Civ.P. 6(b)(2).

The Tenth Circuit Court of Appeals has held that "[a] finding of excusable neglect under Rule 6(b)(2) requires both a demonstration of good faith by the parties seeking the

enlargement and . . . a reasonable basis for not complying within the specified period." *In re Four Seasons Securities Laws Litigation*,  493 F.2d 1288, 1290 (10th Cir. 1974).  More recently, the Supreme Court discussed the nature of "excusable neglect" as used in Rule 6(b) in a bankruptcy appeal in which the Court was called upon to determine the meaning of "excusable neglect" as used in Bankruptcy Rule 9006(b)(1), a rule patterned after Fed.R.Civ.P. 6(b):

> As with Rule 9006(b)(1), there is no indication that anything other than the commonly accepted meaning of the phrase was intended by [the drafters of Rule 6(b)].  It is not surprising, then, that in applying Rule 6(b), the Courts of Appeals have generally recognized that "excusable neglect" may extend to inadvertent delays.  Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute "excusable" neglect, it is clear that "excusable neglect" under Rule 6(b) is a somewhat "elastic concept" and is not limited strictly to omissions caused by circumstances beyond the control of the movant.

*Pioneer Investment Services Company v. Brunswick Associates Ltd. Partnership*,  507 U.S. 380, 391-392 (1993) (internal citations omitted).  The Court concluded that determination of "excusable neglect" "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395 (internal quotations and citations omitted).  Relevant factors to consider are the danger of prejudice to the non-moving party, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.  *Id.*

In this case, consideration of the relevant factors militates toward denying Plaintiff's Motion for Default Judgment.  Because the case was not ready for preliminary consideration

before Defendant Jones entered his appearance, Plaintiff suffered no prejudicial delay and no delay impacted judicial proceedings.  The delay in the entry of appearance was due to misunderstanding on the part of Defendant Jones' counsel.  But there is no indication that Defendant Jones or his counsel were not acting in good faith.

Default judgments are not favored by courts.  *See Katzson Bros., Inc. v. United States Environmental Protection Agency*, 839 F.2d 1396, 1399 (10th Cir. 1988).  Decisions regarding default judgments are left to the discretion of the district court.  *See Ashby v. McKenna*, 331 F.3d 1148, 1152 (10th Cir. 2003).  Under the circumstances presented here, Defendant Jones' failure to act within the allotted time frame was the result of excusable neglect, and Plaintiff's motion for default judgment should be denied as to Defendant Jones.

### B.    <u>Defendant McNutt</u>

Plaintiff also moves for default judgment against Defendant McNutt who has not entered an appearance in this case.  Plaintiff describes "service" of Defendant McNutt as follows:

> Rose McNutt has been **hand delivered** a photo copy of this Courts [sic] Order and a Copy of the Original Complaint in this case on 4-13-2006[,] by the Plaintiff John Davis by way of Lt. Arnold[,] the officer involved in the second attempt to get Mr. Davis to comply with Genetic Testing when LabCorp sent Ms. McNutt to obtain another sample on 4-13-2006[,] after this suit had began [sic].

Plaintiff's Motion for Default [Doc. #41] at 2 (emphasis in original).

Rule 4(c)(1) of the Federal Rules of Civil Procedure requires that a defendant in a civil case be served with a summons and a copy of the complaint.  Rule 4(e)(2) governs service upon an individual.  An individual may be served:

> by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Fed.R.Civ.P. 4(e)(2).  It appears from Plaintiff's account of "service" that Defendant McNutt has not been served with a summons.  In fact, it appears that no summons was ever issued for Defendant McNutt.  Plaintiff's Praecipe for Summons [Doc. #13] does not identify Defendant McNutt.  Rather, the Praecipe lists "Nurse from Lab. Corp." to be served at LabCorp's corporate office in Burlington, North Carolina.  That summons was returned unexecuted and filed on June 26, 2006.  The Remarks section states:

> 4/24/06 Mailed Waiver of summons.  6/15/06 per Christina Cates, legal department @ LabCorp, Nurse Doe is not their employee and they will not accept service.

Process Receipt and Return [Doc. #35].  Moreover, the record does not contain proof of service by anyone for this defendant. Fed.R.Civ.P. 4(l) states, "If service is made by a person other than a United States marshal or deputy United States marshal, the person shall make affidavit thereof."  There is no such affidavit in the record.  This Court cannot enter a default judgment against a defendant who has not been served.

At this point, Plaintiff has failed to timely effect service of process on Defendant McNutt.  Rule 4(m) sets forth the time limit for service of the summons and complaint:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).  In this case, Plaintiff has not effected service upon Defendant McNutt, but it appears that Plaintiff believes he had.  Under these circumstances, the Court must consider whether Plaintiff has shown "good cause" sufficient to justify an extension of time. *See Espinoza v. United States*, 52 F.3d 838, 840 (10th Cir. 1995).

*Espinoza* sets forth factors to be considered in determining whether to grant a plaintiff an extension of time to effect service.  *Id.* at 842.  The first factor to consider is whether the statute of limitations would bar the refiled action.  Plaintiff complains of actions allegedly arising on September 1, 2005.  It appears, therefore, that the applicable statute of limitations has not run and that Plaintiff could still file a timely complaint against Defendant McNutt.[4] Another factor to consider is whether the Plaintiff has tried but has been unsuccessful in an attempt to serve the party.  As set forth, Plaintiff has made two attempts to effect service on Defendant McNutt, and apparently thought he had succeeded.  Under these circumstances, Plaintiff has  shown good cause sufficient to warrant an extension of time under Rule 4(m). If this Report and Recommendation is adopted, it is recommended that Plaintiff be granted an additional sixty days from the date of an order adopting this Report and Recommendation in which to cure the deficiencies of service as to Defendant McNutt.

---

[4]The statute of limitations for 42 U.S.C. § 1983 claims arising in Oklahoma is two years. *See Meade v. Grubbs*, 841 F.2d 1512, 1524 (10th Cir. 1988).

## C.     Defendant LabCorp

Plaintiff contends that default judgment should be entered against Defendant LabCorp as a sanction for failing to timely comply with this Court's order for a Special Report. *See* Doc. #55 at 2.  Plaintiff is apparently alluding to this Court's Order of April 4, 2006, which states that a Special Report is necessary "to develop a record sufficient to ascertain whether there are any factual or legal bases for Plaintiff's claims" [Doc. #10].  This Order is, however, directed to "Officials responsible for the operation of the appropriate custodial institution[.]"  Because LabCorp is not responsible for the operation of LARC, LabCorp is under no obligation to file a Special Report.  Plaintiff's Motion for Default Judgment as to Defendant LabCorp should be denied.

## VI.    DOC Defendants' Motion to Dismiss

The DOC Defendants move for dismissal of Plaintiff's Second Amended Complaint based solely on their assertion that Plaintiff has failed to satisfy the exhaustion requirement of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), as to all claims presented.  As discussed in further detail below, recent Tenth Circuit case law dictates dismissal of some, but not all, of Plaintiff's claims.

## A.     Standard of Review

A court may dismiss a cause of action under Rule 12(b)(6) for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.  *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993).  In applying this standard, a court must examine the factual record in the

light most favorable to the nonmoving party. *Wolf v. Prudential Ins. Co. of America*, 50 F.3d

793, 796 (10th Cir. 1995).   Further, a court must liberally construe a *pro se* plaintiff's

pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) ("[W]e hold [a *pro se* complaint]

to less stringent standards than formal pleadings drafted by lawyers.").

### B.   <u>Exhaustion Requirements</u>

The Prison Litigation Reform Act (PLRA) mandates exhaustion of administrative

remedies in actions, such as this one, challenging prison conditions:

> No action shall be brought with respect to prison conditions under section
> 1983 of this title, or any other Federal law, by a prisoner confined in any jail,
> prison, or other correctional facility until such administrative remedies as are
> available are exhausted.

42 U.S.C. § 1997e(a).  The Supreme Court and the Tenth Circuit Court of Appeals have held

that actions filed before the exhaustion requirement is satisfied must be dismissed. *Booth v.*

*Churner*, 532 U.S. 731, 740-741 (2001); *see also Steele v. Federal Bureau of Prisons*, 355

F.3d 1204, 1207 (10th Cir. 2003) ("[T]he substantive meaning of § 1997e(a) is clear: resort

to a prison grievance process must precede resort to a court.").

Tenth Circuit precedent requires a prisoner to sufficiently plead exhaustion of

administrative remedies in the complaint or face dismissal of his section 1983 action. *Steele*,

355 F.3d at 1209.  Section 1997e(a) requires a prisoner not only to initiate the grievance

process, but to follow the process to its conclusion. *See Jernigan v. Stuchell*, 304 F.3d 1030,

1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete

it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies.").

Moreover, Tenth Circuit precedent interprets section 1997e(a) as requiring total exhaustion of a prisoner's claims.  Generally, therefore, if a complaint contains both exhausted and unexhausted claims, the entire action is subject to dismissal.  *See Ross v. County of Bernalillo*, 365 F.3d 1181, 1189 (10th Cir. 2004) ("We agree that the PLRA contains a total exhaustion requirement, and hold that the presence of unexhausted claims in Ross' complaint required the district court to dismiss his action in its entirety without prejudice.").  Recently, the Tenth Circuit tempered the total exhaustion requirement by identifying an exception to the rule for claims which have been properly denied by prison officials as untimely:

> In keeping with the *Ross* Court's policy-based analysis and the analogy it drew between habeas and the PLRA . . . , claims that have been properly denied by the prison as untimely are, practically speaking, procedurally defaulted, and thus may be dismissed from the complaint individually and with prejudice.

*Kikumura v. Osagie*, 461 F.3d 1269, 1289 (10th Cir. 2006).[5]  Moreover, a court may dismiss a claim that "fails to state a claim upon which relief can be granted . . . without first requiring the exhaustion of administrative remedies."  42 U.S.C. § 1997e(c)(2).

---

[5]*Kikumura v. Osagie* involved a federal prisoner in the custody of the Bureau of Prisons (BOP) and is written in light of the grievance procedures promulgated by the BOP.  The legal principles, however, are applicable to state prisoners as well as federal prisoners.

The DOC has set forth its Inmate/Offender Grievance Process in Policy #OP-090124. There are three stages to the grievance process: informal resolution, formal grievance, and appeal to the Administrative Review Authority or Chief Medical Officer of the DOC.[6]

The policy requires an inmate to attempt informal resolution before filing a formal grievance. First, an inmate must attempt to resolve the complaint informally by talking with the case manager, supervising employee or other appropriate staff within three days of the incident. OP-090124 § IV(A). If the first attempt to resolve the issue is unsuccessful, the inmate must then submit a Request to Staff to an appropriate staff member stating the problem completely but briefly. Requests to Staff must be submitted within seven calendar days of the incident forming the basis of the request. OP-090124 § IV(B)(1)-(2).

 If the inmate's complaint is not resolved informally, the inmate may file a formal grievance by submitting to the facility's reviewing authority a completed "Inmate/Offender Grievance Report Form" along with the original "Request to Staff" form used in the informal process. *See* OP-090124 § V(A). A Grievance Report generally must be submitted within fifteen calendar days of the incident or the date of the response to the Request to Staff, whichever is later. The reviewing authority may, however, "extend the submitting period up to 60 days for good cause." After sixty days, however, no grievance will be accepted "unless

---

[6]"Administrative Review Authority" is defined as "t[he] director, chief medical officer [of the DOC] or their designee to whom the formal grievance is submitted for final appeal." OP-090124 § I(E).

ordered by a court, the director, chief medical officer, or their designee." *See* OP-090124 §

V(A)(1)-(3).

### C.      Bases for DOC Defendants' Motion to Dismiss

In their Motion to Dismiss, the DOC Defendants' sole contention is that Plaintiff's

action must be dismissed for failure to exhaust administrative remedies under the "total

exhaustion" requirement set forth in *Ross*.  First, the DOC Defendants point out that

Plaintiff's grievance relating to the September 1, 2005, paternity test incident did not identify

every legal theory of recovery that he now presents in his Second Amended Complaint. *See*

DOC Defendants' Motion to Dismiss at 3, ¶ 4 and Plaintiff's Second Amended Complaint,

Counts 1-14.  Second, Defendants base their argument for dismissal on the fact that as to the

claim in Count 15 regarding Plaintiff's legal correspondence, Plaintiff's prison grievance was

rejected as untimely.  Third, as to the claim presented in Count 16, Defendants note that

Plaintiff has never formally or informally used the prison grievance system to challenge

Defendants' alleged interference with his right to access the courts.  Fourth, the DOC

Defendants argue that Plaintiff's action should be dismissed based on their view that Plaintiff

has asserted claims for relief involving challenges to prison disciplinary actions that were not

completely exhausted before Plaintiff filed this lawsuit.  Finally, these Defendants state that

Plaintiff has raised numerous unexhausted claims in his Second Amended Complaint that are

not listed in Counts 1 through 16.  As discussed in further detail below, none of these assertions provide a basis for dismissal of Plaintiff's action.[7]

## 1.      Exhaustion of Administrative Remedies as to Legal Theories

The DOC Defendants contend that Plaintiff's Second Amended Complaint must be dismissed because Plaintiff failed to include in his grievance every legal theory upon which he now relies.  This argument is not persuasive.

In *Kikumura v. Osagie*, the Court recognized that there is no Tenth Circuit precedent governing how much information a prisoner must provide in his administrative grievance to satisfy the exhaustion requirements of the PLRA.  Following the Seventh Circuit, the Court determined that "'what things an administrative grievance must contain' is first a 'choice-of-law issue.'" *Kikumura* at 1282 (*quoting Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002)).  Because the PLRA does not specify the procedural requirements necessary for exhaustion, state law is applicable to state prisoners and federal administrative law is applicable to federal prisoners.  In *Kikumura*, the Tenth Circuit found that the BOP grievance policy does not "specify the kind of information needed in a grievance."  *Id.*[8]  The Tenth Circuit,

_____

[7]LabCorp filed what it called "Defendant LabCorp's Joinder in the Motion to Dismiss Second Amended Complaint Pursuant to 42 U.S.C. § 1997e."  *See* Doc. #59.  The Court construes this filing as a motion to join the DOC Defendants' Motion to Dismiss as a basis for dismissal of the claims against LabCorp.  LabCorp does not advance any argument, authority or analysis as to why the PLRA's exhaustion requirement should apply to claims against a non-governmental corporate entity.  Consequently, the issue has not been properly presented and briefed to the Court.  Without deciding the issue inherent in the joinder motion, therefore, LabCorp's motion to join the Motion to Dismiss of the DOC Defendants should be denied.

[8]The DOC's grievance policy resembles that of the BOP in this respect.  The DOC grievance procedure states only that a "grievance may be used to address issues regarding conditions of
(continued...)

therefore, found it necessary to "craft a rule for when the prison regulations are silent." *Id.*

The exhaustion rule developed by the Tenth Circuit states:

> When the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in the notice-pleading system, the grievant need not lay out the facts, *articulate legal theories*, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.

*Id.* at 1283 (emphasis added).  Although Plaintiff's grievance pertaining to the September 1, 2005, paternity test incident did not identify all the legal theories upon which he bases this action, the grievance did sufficiently alert prison officials as to the nature of the alleged wrong.[9]  Dismissal of Plaintiff's action is not warranted on this ground.

### 2. <u>Allegation in Count 15</u>

Plaintiff alleges in Count 15 that prison officials violated his constitutional rights by opening legal mail addressed to him when he was not present.  On April 14, 2006, Plaintiff submitted a Request to Staff to his Unit Officer asking the Unit Officer to verify that prison officials had opened Plaintiff's legal mail and stuck it in his cell door.  The Unit Officer responded the same day stating, "This is true."  Special Report Attachment 15 at 3.  On May 16, 2006, almost thirty days later, Plaintiff filed a formal grievance regarding the opening of

---

[8](...continued)
confinement, actions of staff, and incidents occurring within or under the authority and control of the Department of Corrections that have personally affected the inmate/offender making the complaint and for which a remedy may be allowed by the department."  OP-09124 II(A)(1).

[9]Plaintiff's Grievance Report and related administrative materials pertaining to the September 1, 2005, incident are attached to the Special Report.  *See* Special Report [Doc. #51], Attachment 4.

his legal mail. Special Report Attachment 15 at 2. On May 25, 2006, the Warden responded

to Plaintiff's grievance, stating that the time period for filing a grievance had elapsed before

the grievance was received. Special Report Attachment 15 at 1.[10] Defendants contend that

this action must be dismissed in its entirety because Plaintiff did not properly exhaust this

claim. Pursuant to the three-part holding in *Kikumura*, dismissal of the entire action is not

required:

> First, an action containing both exhausted claims and procedurally barred
> claims does not fall within the scope of the total exhaustion rule. Second, this
> is true even if the prison grievance system did not issue a final rejection of the
> procedurally barred claims until after the prisoner filed suit. Third, claims that
> have been properly denied by the prison as untimely are, practically speaking,
> procedurally defaulted, and thus may be dismissed from the complaint
> individually and with prejudice.

*Kikumura* at 1289. The procedural history underlying Count 15 closely parallels the

procedural history of some of the claims in *Kikumura*. In fact, Plaintiff's grievance was

specifically rejected on grounds that it was not timely filed and therefore is "practically

speaking, procedurally defaulted." *Id.* Pursuant to the teachings in *Kikumura*, Plaintiff's

claim in Count 15 should be dismissed with prejudice for failure to timely exhaust

administrative remedies, but this disposition does not require dismissal of the entire action.[11]

---

[10]Under DOC regulations, grievances must generally be filed within 15 calendar days of the incident or the date of the response to the Request to Staff, whichever is later. *See* OP-090124 §V(A)(1), accessible at <http://www.doc.state.ok.us/offtech/toc09.htm>.

[11]Even if this claim were not procedurally barred, dismissal pursuant to 42 U.S.C. § 1997e(c)(2) would be appropriate based on Plaintiff's failure to state a claim upon which relief can be granted. Isolated incidents of opening constitutionally protected legal mail "without any evidence of improper motive or resulting interference with [plaintiff's] right to counsel or to access to the courts" do not support a civil rights claim. *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990).

### 3.     **Allegations in Count 16**

In Count 16, Plaintiff claims that his constitutional right to access to the courts has been violated by prison officials who have been "hindering his ability to exhaust administrative remedies."  Plaintiff alleges that Defendant Randall Workman and his staff "have done everything possible to prevent [Plaintiff] from exhausting his administrative remedies."  According to Plaintiff, prison officials sometimes refuse to answer his requests to staff and then return grievances because no request to staff was attached as required by the grievance policy.  Count 16, however, on its face, fails to state a claim upon which relief can be granted and should be dismissed.  Dismissal of this claim without first requiring exhaustion of administrative remedies is authorized pursuant to 42 U.S.C. § 1997e(c)(2).[12]

The Supreme Court has recognized a fundamental constitutional right of access to the courts.  *See Bounds v. Smith*, 430 U.S. 817, 828 (1977).  As the Court has made clear, however, detainees are entitled to meaningful, but not total or unlimited, access to the courts. *Id.* at 823.  Further, an inmate's contentions of deprivation of access to courts must show actual injury, not mere deprivation, as a "constitutional prerequisite" to bringing a claim. *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  The right to access the courts prohibits prison officials from affirmatively hindering a prisoner's efforts to construct a nonfrivolous appeal or claim.  *Green v. Johnson*, 977 F.2d 1383, 1389-90 (10th Cir. 1992).  To state a valid claim in this context, however, a prisoner must still demonstrate an actual injury that "hindered his

---

[12]As noted *supra* at 15, 42 U.S.C. § 1997e(c)(2) provides in pertinent part that:  "In the event that a claim . . . fails to state a claim upon which relief can be granted, . . . the court may dismiss the underlying claim without first requiring exhaustion of administrative remedies."

efforts to pursue a legal claim." *Lewis* at 351.  In Count 16, Plaintiff has not identified any actual injury that hindered his efforts to pursue a legal claim.

Moreover, the Tenth Circuit has determined that prison grievance procedures do not create a protected liberty interest and, therefore, do not implicate a prisoner's due process rights.  *See Murray v. Albany County Board of County Commissioners*, No. 99-8025, 2000 WL 472842, at *2 (10th Cir. Apr. 20, 2000) (unpublished op.) ("[P]rison grievance procedures do not 'give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment.'") (*quoting Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)); *Anderson v. Colorado Department of Corrections*, No. 98-1477, 1999 WL 387163, at *2 (10th Cir. June 14, 1999) (unpublished op.) (holding that a state inmate's § 1983 "allegations relating to the requirements of the Department of Corrections grievance procedure do not support a due process claim because those procedures do not create any liberty interest in the incarcerated petitioner").  *See also Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (holding that federal prison administrative remedy procedures do not "in and of themselves" create a liberty interest in access to that procedure; finding the prisoner's right to petition the government for redress is the right of access to the courts, a right that is not compromised by the prison's refusal to entertain his grievance); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (holding that the Constitution creates no entitlement to grievance procedures or access to such procedures voluntarily established by the state); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding there is no legitimate claim of entitlement to a grievance procedure).  Plaintiff's "alleged denial of access to state

21

administrative grievance procedures has not resulted in a violation of his constitutional rights." *Walters v. Corrections Corp. Of America*, No. 04-6067, 119 Fed. Appx. 190, 191 (10th Cir. Dec. 7, 2004) (unpublished op.).

For these reasons, Plaintiff's claim in Count 16 alleging that prison officials hindered his right to access the courts should be dismissed for failure to state a claim upon which relief can be granted. Plaintiff has failed to allege actual injury resulting from the actions of prison officials. Moreover, the prison grievance procedure does not confer substantive due process rights. *See Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) ("To the extent Gaines seeks relief for alleged violations of state statutes and prison regulations, [] he has stated no cognizable claim under § 1983.").

### 4.   Allegations Related to Prison Disciplinary Proceedings

In his Second Amended Complaint, Plaintiff states, "When [Plaintiff] started to *Exhaust Administrative Remedies*, as required by law, DOC officials at Lexington Correctional Center began retaliating against Mr. Davis." Second Amended Complaint at 3 ¶ C.1 Nature of Case. Plaintiff describes in detail several disciplinary actions brought against him and the resulting punishments, sometimes including loss of earned credits. Defendants assert that Plaintiff's Second Amended Complaint must be dismissed because Plaintiff had not completely exhausted his administrative remedies as to some of these disciplinary convictions before filing this action. This argument is unpersuasive. First, if Plaintiff were attempting to challenge the outcome of prison disciplinary proceedings, he would have to do so in a habeas action brought pursuant to 28 U.S.C. § 2241. Second, as

discussed in further detail below, Plaintiff has not included allegations related to disciplinary convictions in any of the sixteen counts set forth in the Second Amended Complaint.

**5.    Additional Matters Discussed in Plaintiff's Second Amended Complaint**

The DOC Defendants state that "Plaintiff failed to exhaust his administrative remedies regarding the numerous claims asserted in the 'Nature of the Case' section of his Second Amended Complaint and failed to even begin the process regarding most of the these claims."  DOC Defendants' Motion to Dismiss at 10.  Plaintiff has not, however, included these "numerous claims" in the sixteen counts of his Second Amended Complaint in which he has asserted violations of his constitutional rights.  Moreover, Plaintiff makes it clear in his Response to the DOC Defendants' Motion that the only issues for which he seeks damages are those included in the sixteen counts.  For example, Plaintiff states that the Defendants' assertion that he did not appeal a grievance regarding the temporary deprivation of legal materials "is moot . . . because [the issue] was not listed as a Count or a Civil Rights violation in [Plaintiff's] Second Amended Complaint."  Plaintiff's Response [Doc. #60] at 6.

For purposes of determining whether Plaintiff has exhausted his administrative remedies, which is the sole basis for dismissal asserted by the DOC Defendants, this Court should consider only the claims specifically asserted as "Counts" in the Second Amended Complaint.  The Supreme Court requires that "less stringent standards" be applied to *pro se* complaints than formal pleadings drafted by lawyers.  *See Haines v. Kerner*, 404 U.S. 519,

520 (1972).  It would be a misapplication of the Supreme Court's teachings in *Haines v. Kerner*, however, to "liberally construe" Plaintiff's Second Amended Complaint to assert unexhausted claims that would then subject the action to dismissal.

## RECOMMENDATION

It is recommended that Plaintiff's Motion for Injunction [Doc. #3], Plaintiff's Motion for Default Judgment as to Defendants Jones and McNutt [Doc. #41], Plaintiff's Motion for Default Judgment as to LabCorp [Doc. #55], and Plaintiff's Motion to Reconsider [Doc. #56] all be denied. It is further recommended that the DOC Defendants' Motion to Dismiss [Doc. #52] be granted as to the claims raised in Counts 15 and 16 and denied as to the other Counts in the Second Amended Complaint.  The claim raised in Count 15 should be dismissed with prejudice as it is procedurally barred, and the claim raised in Count 16 should be dismissed without prejudice pursuant to 42 U.S.C. § 1997e(c)(2) for failure to state a claim upon which relief may be granted.  Defendant LabCorp's motion to join the DOC Defendants' Motion to Dismiss [Doc. #59] should be denied.  Finally, if this Report and Recommendation is adopted, it is recommended that Plaintiff be granted an additional 60 days from the date of such order to effect service upon Defendant McNutt.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any objections must be filed with the Clerk of the District Court by November   27th  , 2006.  *See* LCvR72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate

review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation does not terminate the referral by the District Judge in this matter.

ENTERED this __3rd__ day of November, 2006.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE