## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

JOHN C. DAVIS,                                    )
                                                  )
                              Plaintiff,          )
v.                                                )        Case No. CIV-06-229-HE
                                                  )
OKLAHOMA DEPARTMENT OF                            )
CORRECTIONS; JUSTIN JONES,                        )
DIRECTOR; RANDALL WORKMAN,                        )
WARDEN; CAPTAIN DAVIS; JOSH LEE,                  )
LIEUTENANT; SERGEANT DUNCAN;                      )
SERGEANT RANELLS; LABORATORY                      )
CORPORATION OF AMERICA;                           )
ROSE MCNUTT, NURSE,                               )
                                                  )
                              Defendants.         )

## SUPPLEMENTAL REPORT AND RECOMMENDATION

Plaintiff, formerly a state prisoner proceeding *pro se* and *in forma pauperis*, brings

this action pursuant to 42 U.S.C. § 1983[1] alleging violation of his constitutional rights.  *See*

Second Amended Complaint [Doc. #36].  This matter has been re-referred for further

proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C).  Several motions are pending

before this Court.  Plaintiff has filed a "Motion for Summary Judgment/Motion for Default

Order Against Rose McNutt" [Doc. #87].  Additionally, Plaintiff has filed a "Motion for

Default and/or Motion for Summary Judgment" as to  Defendants DOC, Jones, Workman,

Davis, Lee, Rannels, and Duncan (DOC Defendants) [Doc. #88].  The DOC Defendants have

---

[1]Plaintiff incorrectly states that the jurisdictional underpinnings of his case rest on *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

filed a Motion to Dismiss for Lack of Prosecution (DOC Defendants' Motion) [Doc. #116].[2]

Defendant Laboratory Corporation of America (LabCorp) has moved to dismiss claims

against "Remote Franchise for LabCorp (OKC Office)" as a non-existent entity [Doc. #85].

Defendant LabCorp has also filed a Motion for Summary Judgment [Doc. #103] and a

Motion to Compel Plaintiff to respond to discovery requests [Doc. #120].[3]

For the reasons set forth below, it is recommended that Plaintiff's Motion for

Summary Judgment as to Defendant McNutt be denied and that partial summary judgment

be entered *sua sponte* in favor of Defendant McNutt on Plaintiff's federal claims.   If this

Report and Recommendation is adopted, Plaintiff's state law claims against Defendant

McNutt should be dismissed without prejudice.   It is further recommended that Plaintiff's

Motion for Default Judgment as to the DOC Defendants be denied and that the DOC

Defendants' Motion to Dismiss be granted.   Finally, it is recommended that the dispositive

motions submitted by Defendant LabCorp be granted.   In light of this recommendation, it is

further recommended that Defendant LabCorp's Motion to Compel be denied as moot.

## I.   <u>Procedural Background</u>

On March 20, 2007, this District Court, adopting a prior Report and Recommendation,

granted the DOC Defendants' then-pending motion to dismiss as to Plaintiff's claims in

Counts 15 and 16 and denied the motion as to the claims in Counts 1-14.   Defendant

---

[2]Plaintiff has not responded to the DOC Defendants' Motion.

[3]Plaintiff has not responded to Defendant LabCorp's Motion for Summary Judgment or Motion to Compel.

LabCorp's motion to join the DOC Defendants' motion to dismiss was denied.  Plaintiff's then-pending motions for default judgment were also denied, and Plaintiff was granted additional time to properly serve Defendant McNutt.  *See* Doc. #72.

Summons was executed as to Defendant McNutt on March 22, 2007.  *See* Doc. #74. The Summons informed Defendant McNutt that she had 60 days from the date of service within which to answer the Second Amended Complaint.  *See* Doc. #74 at 2.  On April 20, 2007, Defendant McNutt filed an untitled document answering Plaintiff's Complaint.  *See* Doc. #91.  She entered her appearance *pro se* on May 16, 2007.  *See* Doc. #96.

On June 8, 2007, Plaintiff notified the Court of his change of address which indicated that he had been released from incarceration.  *See* Doc. #97.  On August 23, 2007, the DOC Defendants filed a Motion to Compel Plaintiff to respond to their discovery requests.  *See* Doc. #112.  This Court granted the DOC Defendants' Motion to Compel on August 23, 2007, ordering Plaintiff to respond to the DOC Defendants' discovery requests by September 13, 2007, and reminding Plaintiff that he could face sanctions for failure to provide the required disclosures in accordance with Rule 37 of the Federal Rules of Civil Procedure.  *See* Doc. #113.  Plaintiff did not respond as ordered, and on September 20, 2007, the DOC Defendants filed the pending Motion to Dismiss for Lack of Prosecution.  *See* Doc. #116.

## II.    <u>Factual Background and Claims Presented</u>

On September 1, 2005, Defendant Rose McNutt went to the Lexington Assessment and Reception Center (LARC) for the purpose of collecting samples of genetic material from Plaintiff.  By order of an administrative law judge for the Oklahoma Department of Human

Services (DHS), the genetic material was to be used by LabCorp to test Plaintiff's DNA to determine paternity of a minor child.  It is undisputed that Defendant McNutt had received this assignment as an independent contractor for Specimen Specialists, Inc., which, in turn was acting as an independent contractor for Defendant LabCorp.  *See* Defendant Laboratory Corporation of America's Motion for Summary Judgment [Doc. #103] Exhibits 2 and 3.

According to Plaintiff, the visit quickly devolved into a situation during which he was confronted by prison guards who used force and threat of force to subdue him so that Defendant McNutt could obtain samples of his saliva:

> DOC officers permitted Ms. McNutt to enter the controlled environment through the security doors and Ms. McNutt was assisted by one, Sgt. Duncan, into the secured visiting room where [Plaintiff] was being detained for this test. Upon [Plaintiff's] being asked to submit to the test[,] [Plaintiff] refused, per his State and Federal Right to refuse, such a test. [Plaintiff] was asked to sign a "Refusal Form" which [he] also refuse [sic] to do.  Rose McNutt then told Sgt. Duncan to sign his name to the refusal form. [Plaintiff] told Duncan that he will seek judicial relief if DOC or Sgt. Duncan interfere(s) with ongoing legal issues in which DOC policy and State Law strictly forbid DOC or it's [sic] officers from assisting, offering legal advice, or interfering with a case currently in litigation.

> Duncan then contacted his supervisor Lt. Lee; who in turn, contacted Capt. Davis, who contacted the Warden Randall Workman, whom [sic] contacted Oklahoma City DOC headquarters.  DOC headquarters gave the approval to "take the test by any means necessary" because it was represented to the headquarters that Lexington officials had a "Court Order stating to take the test."

> Sgt. Ranells, Sgt. Duncan, Lt. Josh Lee, Captain Davis, and Rose McNutt actively restrained Plaintiff Davis using unnecessary force and restraint by way of handcuffs and physical force to obtain this sample against [Plaintiff's] pleading, begging, verbal, and physical non-compliance to refuse the test in which [Plaintiff] had a legal right.  Therefore, [Plaintiff's] Constitutional Rights were violated along with State and Federal Law.

Second Amended Complaint at 3 ¶ C.1 Nature of Case.

Defendant McNutt's description of her encounter with Plaintiff closely tracks the

description in the Second Amended Complaint:

> On the date in question, 09-01-2005, Rose entered the Lexington Assessment and Reception Center in Lexington, Okla. with a "Court Order[4] to obtain a genetic sample for paternity testing from a Mr. John Davis."

> Rose was accompanied to the holding cell by Sgt. Duncan and several other officers, where John Davis was waiting.  Rose told Mr. Davis what she was there for.  Mr. Davis refused the testing, so she offered him a refusal form which he also refused to sign.  Rose asked one of the officers if they would sign the form stating that Mr. Davis refused to sign.  Mr. John Davis was shouting threats at the officers.  At this time Rose was asked to step out of the holding cell, Sgt. Duncan took the papers Rose had and went to the warden.

> When Sgt. Duncan came back, he went into the holding cell.  When he stepped out he told Rose that Mr. John Davis would corporate [sic] and that she would have no trouble out of him.  Rose stepped into the holding cell; Mr. Davis was seated in a chair and was handcuffed.

> Rose proceeded with collecting Mr. John Davis's right thumb print, Signature, and four (4) separate swabs, inside the mouth top and bottom, to collect DNA, upon leaving She [sic] collected a photo copy of Mr. Davis's Inmate card, with

---

[4]A copy of the order in question is attached to Defendant LabCorp's Motion for Summary Judgment [Doc. #103] Exhibit 1-A at 2.  The document is entitled "Court Minute" and is signed by an administrative law judge for the DHS.  The order states:  "Pursuant to T.56 § 238.6B(B)(9), the Defendant [Mr. Davis] is hereby ordered to submit to genetic testing forthwith."  The order further provides that if Mr. Davis "fails to appear or refuses to submit to said genetic test, [he] shall be in default and an order shall be entered against him."

photo.  She then sealed the kit, and sent it to Labcorp [sic] in N.C. to be processed.  She then contacted Specimen Specialists in Ca. and told them that Mr. Davis was collected.

Doc. #91 at 1.[5]

The factual allegations underlying Counts 1 through 14 of Plaintiff's Second Amended Complaint are directly related to the above-described incident.  In these counts, Plaintiff challenges the actions of the defendants as a violation of the Fourth Amendment's prohibition of unreasonable searches and seizures, as a violation of the Eighth Amendment's prohibition of cruel and unusual punishment, and as a violation of his rights to due process. Plaintiff also posits various legal theories based on state law.

## III.   Plaintiff's Motion for Summary Judgment / Default Judgment as to Defendant McNutt

Scattered throughout the Second Amended Complaint are allegations specific to Defendant McNutt's involvement in the incident upon which the Second Amended Complaint is predicated.  In Counts 1 and 5, Plaintiff contends that Defendant McNutt's collection of genetic material constitutes an illegal search and seizure.  Specifically, Plaintiff

---

[5]Defendant McNutt denies that she helped to "actively restrain" Plaintiff as he alleges in the "Nature of the Case" section of his Second Amended Complaint.  Notably, Plaintiff does not repeat this allegation against Defendant McNutt in the actual counts.  Plaintiff's excessive force claim is lodged in Count 6 against "Defendants number 4-7."  Second Amended Complaint at 10.  The corresponding Defendants are identified as Capt. Davis, Josh Lee, Sgt. Duncan, and Sgt. Ranells. Second Amended Complaint at 1-2.  Moreover, it defies credulity that four correctional officers would need or even allow Defendant McNutt to help them "actively restrain" Plaintiff.  Accordingly, Plaintiff's Second Amended Complaint is liberally construed as alleging that the "force" used by Defendant McNutt consisted of the pressure she necessarily used in  swabbing the inside of Plaintiff's mouth to collect genetic material.  This reading of the Second Amended Complaint is supported by Plaintiff's statement in Count 6 that "any force used was excessive."  Second Amended Complaint at 10.

alleges that "Rose McNutt illegally invaded [his] body cavity by placing (4) separate swab sticks inside his mouth absent a Court Order authorizing her to perform the test without prior written or verbal consent." Second Amended Complaint at 8. Plaintiff further states that "Rose McNutt illegally searched the inside of [his] body with swab sticks" and that the genetic material collected "constitutes an illegal seizure of [his] DNA chromosomes." Second Amended Complaint at 10.

In Count 7, Plaintiff attempts to characterize his claim against Defendant McNutt as an Eighth Amendment violation "[d]ue to this being a medical procedure." Second Amended Complaint at 10. In Count 8, Plaintiff alleges that Defendant McNutt was "negligent in her actions because she knew [he] had a right to refuse the test[.]" Second Amended Complaint at 11.

Count 10 is based on alleged violation of Plaintiff's due process rights. He states that if Defendant McNutt had not taken the DNA samples for testing, he would have "had legal grounds on which to argue the DHS case and had legal standing to refuse the test, due to Oklahoma and Federal Law[.]" Second Amended Complaint at 12.

Counts 13 and 14 are predicated on state law claims of assault and battery. Plaintiff claims that Defendant McNutt's actions "fit the criteria of Battery due to unwanted and unsolicited touch of [his] person/body" and that Defendant McNutt "used swabs and stuck them into [his] body which is assault." Second Amended Complaint at 13.

A.      **Construction of Pleadings Submitted by *Pro Se* Litigants**

Federal law affords parties the right to "plead and conduct their own cases personally or by counsel[.]" 28 U.S.C. § 1654.   "Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2nd Cir. 1983).   The Supreme Court requires that "less stringent standards" be applied to *pro se* complaints than to formal pleadings drafted by lawyers.   *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).   In *Haines*, the Supreme Court considered whether "inartfully pleaded" allegations in a *pro se* complaint were "sufficient to call for the opportunity to offer supporting evidence." *Id.* at 520.   The "greater flexibility" afforded to *pro se* complaints  applies to all "*pro se* papers."  *See Christensen v. C.I.R.*, 786 F.2d 1382, 1384 (9th Cir. 1986); *see also Traguth v. Zuck* at 95 (district court abused its discretion by failing to take into account defendant's *pro se* status).

In this case, both Plaintiff and Defendant McNutt are proceeding *pro se*, and this Court has the obligation to liberally construe the pleadings filed by each.

Plaintiff specifies that he is bringing his motion for judgment against Defendant McNutt under Rule 56(a), the rule governing the entry of a summary judgment.  The sole ground for summary judgment raised in Plaintiff's motion, however, is his assertion that Defendant McNutt did not answer his Second Amended Complaint within twenty days after

service of the summons.[6]  But the Summons addressed to Defendant McNutt, served on March 22, 2007, states that Defendant McNutt  was required to serve "an answer to the complaint . . . within   60   days after service of this summons . . . exclusive of the day of service."  *See* Doc. #74.[7]  Although inartfully pleaded and not designated as an "Answer," Defendant McNutt responded to Plaintiff's Second Amended Complaint on April 20, 2007, well within the sixty-day period cited on the face of the Summons and one day after Plaintiff filed the motion for judgment.  Under these circumstances, it would be an abuse of this Court's discretion to enter a default judgment or summary judgment in favor of Plaintiff against Defendant McNutt.  Moreover, a review of the record and applicable law, necessitated by consideration of Plaintiff's Motion for Summary Judgment, has led this Court to conclude that summary judgment should be entered *sua sponte* in favor of Defendant McNutt.

Courts are vested with the power to enter summary judgments *sua sponte*.  *See Jones v. Salt Lake County*, 503 F.3d 1147, 1152 (10th Cir. 2007).[8]  Even if a losing party was not on notice that he or she had to come forward with all of his or her evidence, the Tenth Circuit

---

[6]In this respect, Plaintiff's motion is akin to a motion for default judgment under Fed.R.Civ.P. 55.

[7]Pursuant to Rule 12(a)(1)(A), a defendant generally has 20 days to answer a complaint.  It appears, however, that Plaintiff himself wrote in the number 60 in the blank on the summons form served on Defendant McNutt.  The original Praecipe for Summons [Doc. #13] filed by Plaintiff on April 10, 2006, also states that each defendant had 60 days in which to answer Plaintiff's Complaint.

[8]This Court recognizes that a *sua sponte* grant of summary judgment is generally not favored and normally must be limited to cases where the losing party has notice that he or she must come forward with all of his or her evidence.  *See id.*

has held that it will not reverse a *sua sponte* order of summary judgment if the losing party was not prejudiced by the lack of notice. *Id.* (*citing Ward v. Utah*, 398 F.3d 1239, 1245-46 (10th Cir. 2005)). There is no indication of prejudice here that would counsel against the *sua sponte* entry of a summary judgment in favor of Defendant McNutt. First, Plaintiff is the movant and invoked Rule 56 in his Motion for Summary Judgment. Even when a party is proceeding *pro se*, he must nevertheless follow the rules of civil procedure. *See Davis v. Kansas Department of Corrections*, 507 F.3d 1246, 1247 n.1 (10th Cir. 2007). It necessarily follows that a *pro se* litigant should be charged with knowledge of the rules he invokes. Second, this Court has found no disputed material facts which would make further proffers of evidence relevant or necessary for fair disposition of Plaintiff's claims against Defendant McNutt.

### B.    Standard of Review for Summary Judgment

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). The existence of a factual issue does not preclude entry of summary judgment where there is no evidence to support a dispute on that issue or the evidence is so one-sided that no reasonable juror could find for the other side. *True v. United States*, 190 F.3d 1165, 1177 (10th Cir. 1999).

In this case, the facts material to a determination of Defendant McNutt's culpability in the alleged constitutional violations are not disputed.  Defendant McNutt went to LARC bearing a court order requiring Plaintiff to submit to a paternity test.  After Plaintiff's initial refusal to sign either a consent form or a refusal form, prison officials contacted Defendant Workman who contacted Defendant DOC.  After prison officials informed Plaintiff that Defendant DOC had authorized the taking of the genetic material "by any means necessary," Plaintiff was handcuffed and Defendant McNutt collected genetic material by swabbing the inside of Plaintiff's mouth.

### C.    Plaintiff's Fourth Amendment Claim Against Defendant McNutt

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV.  This fundamental right "may not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched or the thing to be seized."  U.S. Const. amend. IV.  "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwanted intrusion by the State."  *Schmerber v. California*, 384 U.S. 757, 767 (1966).

Nevertheless, not every act during which a governmental agent obtains personal information is subject to Fourth Amendment scrutiny.  *See, e.g., Cupp v. Murphy*, 412 U.S. 291, 295 (1973) (permitting a warrantless gathering of material from fingernail scrapings, and characterizing fingerprints as "mere physical characteristics" which are "constantly exposed to the public"); *United States v. Dionisio*, 410 U.S. 1, 14 (1973) (holding person has

no reasonable expectation of privacy as to physical characteristics which he or she routinely exposes to public view); *Katz v. United States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."). Moreover, where "the [Supreme] Court has found a lesser expectation of privacy, or where the search involved a minimal intrusion on privacy interests, the Court has held that the Fourth Amendment's protections are correspondingly less stringent." *Winston v. Lee*, 470 U.S. 753, 766-767 (1985) (internal citations omitted) (bracketed text added). Among searches found to minimally intrude on privacy interests are blood tests, which the Court noted "do not constitute an unduly extensive imposition on an individual's personal privacy and bodily integrity." *Id.* at 762.

The Tenth Circuit has held that the collection of genetic material from a person's body and the subsequent analysis of the DNA in the genetic material constitute search and seizure subject to Fourth Amendment scrutiny:

> Government-forced compliance with a blood draw constitutes a search subject to the Fourth Amendment. Likewise, analyzing the DNA contained within the blood sample, or even from a cheek swab, must pass Fourth Amendment scrutiny.

*Banks v. United States*, 490 F.3d 1178, 1183 (10th Cir. 2007) (citations omitted). *See also Schmerber* at 767 (compulsory administration of blood test involves the "broadly conceived reach" of a search and seizure under the Fourth Amendment).

Regarding the collection of evidence from a person's body, a court must determine whether the governmental actor was justified under the circumstances in requiring the person

12

to submit to the collection and analysis of the evidence and whether the "means and procedures employed" in collecting the evidence "respected relevant Fourth Amendment standards of reasonableness." *Id.* at 768.

The first inquiry involves a determination as to whether the governmental actor had sufficient cause to perform the search. Because paternity cases are not criminal actions, some courts have found that probable cause is not a prerequisite to an order requiring a person to submit to a paternity test. *See S.S. v. E.S.*, 578 A.2d 381, 386 (N.J. Super. 1990).[9] Nevertheless, most courts which have considered the question have held that a court must find at least a "reasonable possibility" or a "prima facie" showing of paternity or an "articulable reason" for suspecting paternity before ordering a compulsory paternity test. *See In re the Interest of Minor Child, J.M.*, 590 So.2d 565, 568 (La. 1991) ("[B]efore the court may issue an order for compulsory blood testing, the moving party must show that there is a reasonable possibility of paternity."); *State ex rel. McGuire v. Howe*, 723 P.2d 452, 454, (1986) (requiring "reasonable possibility or prima facie case"); *S.S. v. E.S.*, 578 A.2d at 386 (before ordering paternity test, court should have "articulable reason" for suspecting defendant is the father).

---

[9]The Supreme Court has considered the warrant requirements when the governmental actor is not conducting a search related to the commission of a crime: "[A] health official need [not] show the same kind of proof to a magistrate to obtain a warrant as one who would search for the fruits or instrumentalities of crime. Where considerations of health and safety are involved, the facts that would justify an inference of 'probable cause' to make an inspection are clearly different from those that would justify such an inference where a criminal investigation has been undertaken." *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 538 (1967).

In this case, an Oklahoma administrative law judge had ordered Plaintiff to submit to genetic testing pursuant to Oklahoma law. *See* Okla. Stat. tit. 56, § 238.6B.[10] Plaintiff does not challenge the evidence upon which the administrative law judge relied in ordering Plaintiff to submit to the paternity test. His sole objection is that the genetic material was gathered without his consent. Plaintiff contends that he had a "right" to refuse to submit to the paternity test because the order for the test did not specifically authorize Defendant McNutt to gather the genetic material even "without prior written or verbal consent." Second Amended Complaint at 8.[11]

Whether a person has consented to a search and seizure is relevant when the search and seizure is conducted without a warrant based on a judicial determination of probable cause. *See United States v. DiGiacomo*, 579 F.2d 1211, 1216 (10th Cir. 1978). Here, Defendant McNutt was acting pursuant to a court order. The administrative law judge had determined that compelling Plaintiff to submit to a paternity test was warranted. Moreover, a person does not have a constitutional right to disobey a court order. The Supreme Court has noted that "all orders and judgments of courts must be complied with promptly." *Maness v. Meyers*, 419 U.S. 449, 458 (1975).

---

[10]The statute states that "if the putative father fails to appear at the genetic testing . . . the finding of paternity shall become final and a support order entered." Okla. Stat. 56, §238.6B(B)(9).

[11]The court order issued by the administrative law judge recited the statutorily-defined negative consequences which could result if Plaintiff refused to submit to the paternity test. This recitation of negative consequences within a paternity proceeding cannot, however, "be translated into according a party the right to decline to submit to court ordered . . . testing." *S.S. v. E.S.*, 578 A.2d 381, 384 (N.J. Super. 1990).

14

> If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect.

*Id.* (citations omitted).  Under the circumstances in this case, Plaintiff's refusal to sign the consent form does not render the search and seizure unconstitutional; Defendant McNutt conducted the search and seizure pursuant to the administrative court order – a judicial determination that the paternity test was warranted.

The second inquiry requires this Court to determine whether the means Defendant McNutt used to conduct the search, that is, the manner in which Defendant McNutt collected the genetic material, was reasonable.  The Supreme Court has recognized the inherent difficulty in determining whether a search is reasonable:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell v. Wolfish*,  441 U.S. 520, 559 (1979).  *See also Maryland v. Buie*, 494 U.S. 325, 331 (1990) ("in determining reasonableness, we [the Supreme Court] have balanced the intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.") (citing cases);  *Vernonia School District 47J v. Acton*, 515 U.S. 646, 652-53 (1995) (reasonableness of a search under the Fourth Amendment is generally

judged by balancing the degree of the search's intrusion into an individual's Fourth Amendment interest against the promotion of legitimate government interests).

In considering the reasonableness of the actions of Defendant McNutt in conducting this search, the Court must balance the intrusion into Plaintiff's privacy via the buccal swab procedure against the State's interest in the welfare and support of minor children.[12]

In determining the degree of intrusion occasioned by a similar search – a blood test – the Supreme Court observed that "the blood test procedure has become routine in our everyday life." *Schmerber*, 384 U.S. at 771 n.13 (internal quotations and citation omitted). The collection of genetic material through buccal swab testing is even less intrusive than a blood test. In fact, some courts have found the buccal swab procedure to be no more intrusive than routine fingerprinting. *See State v. Brown*, 157 P.3d 301, 303 (Or. App. 2007) (use of a swab to take a DNA sample from the mucous membrane of cheek, appears to be no more invasive than the taking of fingerprints); *A.A. ex rel. B.A. v. Attorney General of New Jersey*, 914 A.2d 260, 265 (N.J. 2007) (DNA testing procedure is a search, unlike the taking of fingerprints or photographs, but the practical result is the same – a minor invasion of privacy); *United States v. Owens*, No. 06-CR-72A, 2006 WL 3725547 at *16 n.6 (W.D.N.Y.

---

[12]In deciding whether the "means and procedures" employed in taking genetic material from Plaintiff for the paternity test "respected relevant Fourth Amendment standards of reasonableness," *see Schmerber* at 768, this Court is limited to review of the means and procedures used by Defendant McNutt. As discussed *supra* at 6 note 5, Defendant McNutt was not included in the allegations of Count 6, "Use of Excessive Force." Second Amended Complaint at 10. The Court expresses no opinion as to the reasonableness of the actions of the DOC Defendants given the recommendation that the Motion to Dismiss submitted by the DOC Defendants be granted on procedural grounds. *See* discussion *infra* at 21-22.

2006) (the buccal swab procedure is only slightly invasive and is comparable to fingerprinting) (unpublished op.); *State v. Raines*, 857 A.2d 19, 47 (Md. 2004) (the collection of DNA samples through buccal swab testing subjects a prisoner to little more inconvenience than routine fingerprinting).

In collecting the genetic material, Defendant McNutt employed a minimally intrusive procedure. The minimally intrusive procedure must be viewed in light of and balanced against the state interest at stake. At the very least, a state has a legitimate interest in determining paternity of children and ordering biological fathers to provide for the support of their children. *See State of Oregon v. Spring*, 120 P.3d 1, 5 (Or. App. 2005) (state's interest in ensuring that children receive financial support to which they are entitled is significant); *see also In re Baby Girl L.*, 51 P.3d 544, 555-556 (Okla. 2002) (state has legitimate interest in protecting child's moral, emotional, mental, and physical welfare); *McGuire v. Morrison*, 964 P.2d 966, 968 (Okla. Ct. Civ. App. 1998) (state has valid and compelling interest in protecting the best interests of children). On balance, the State's interest in protecting children by enforcing support obligations of biological fathers outweighs the minimal intrusion into Plaintiff's privacy occasioned by the buccal swab procedure for gathering genetic material and the subsequent testing of his DNA. Defendant McNutt is therefore entitled to summary judgment on Plaintiff's Fourth Amendment claim against her.

D.     **Plaintiff's Eighth Amendment Claim Against Defendant McNutt**

Plaintiff attempts to characterize his Fourth Amendment claim against Defendant McNutt as an Eighth Amendment claim, based on his contention that the buccal swab procedure is a "medical procedure." Second Amended Complaint at 10. Elsewhere in his Second Amended Complaint, Plaintiff contends that the inside of his mouth was cut during the procedure. Second Amended Complaint at 8.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted). To state a valid claim of medical mistreatment under the Eighth Amendment a prisoner must have suffered "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* If Defendant McNutt's swabbing of Plaintiff's mouth caused a cut on the inside of his mouth as alleged, the injury is not serious enough to support an Eighth Amendment claim. Moreover, Plaintiff has not described any evidence that would support a contention that Defendant McNutt was deliberately indifferent to Plaintiff's serious medical needs. Therefore, Defendant McNutt is entitled to summary judgment on this claim.

### E.    **Plaintiff's Due Process Claim Against Defendant McNutt**

Plaintiff contends that by gathering genetic material for the paternity test, the results of which were eventually reported to the DHS, Defendant McNutt violated his due process rights. This specious argument it based on Plaintiff's contention that, had the paternity test

not been performed, he would have had "legal grounds on which to argue the DHS case[.]"[13] As discussed above, however, a party to a case does not have a constitutional right to refuse to comply with a court order. Moreover, if the paternity test had not been conducted, the administrative law judge would have entered default judgment against Plaintiff. *See* Court Minute, Doc. #103, Exhibit 1-A at 2. *See also* Okla. Stat. tit. 56, §238.6B(B)(9). Defendant McNutt's collection of genetic material did not result in a due process violation, and she is entitled to summary judgment on Plaintiff's due process claim.

### F.   Plaintiff's State Law Claims Against Defendant McNutt

Plaintiff alleges that Defendant McNutt violated various state laws. He contends that the buccal swab procedure, performed without his consent, constitutes assault and battery under Oklahoma law. He further alleges that Defendant McNutt's actions were negligent.[14]

The Tenth Circuit Court of Appeals has recently reiterated that "pre-trial dismissal of all federal law claims, leaving only a state law claim, generally prevents a district court from reviewing the merits of the state law claim." *McWilliams v. Jefferson County*, 463 F.3d 1113, 1118 (10th Cir. 2006) (citations omitted).

> "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims."

---

[13]Though not entirely clear, it appears that Plaintiff is arguing that he could have denied paternity, but for the results of the DNA test.

[14]Claims of negligence do not rise to the level of constitutional violations. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Therefore, any claims of negligence would necessarily be based on state law.

*Id.* at 1118 (*quoting Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)). If this Supplemental Report and Recommendation is adopted, judgment in favor of Defendant McNutt will be entered as to all federal law claims. This case has no unusual features that would counsel retention of the pendent state law claims. The Court should, therefore, decline to exercise jurisdiction over Plaintiff's state law claims and dismiss these claims without prejudice.

**IV.    Plaintiff's Motion for Default Judgment as to the DOC Defendants**

Plaintiff contends that default judgment should be entered against the DOC Defendants because "[a]s of 4/10/2007, no answer has been filed with this Court[.]" *See* Motion for Default and/or Motion for Summary Judgment [Doc. #88] at 2. As Plaintiff points out, the DOC Defendants sought and received several extensions of time to file the court-ordered Special Report and "answer(s) and/or dispositive motion(s)." *See* Order of April 4, 2006, [Doc. #10]. But Plaintiff did not file his Second Amended Complaint until June 30, 2006. [Doc. #36]. Thereafter, a new date for the Special Report and answer and/or dispositive motion was set. The DOC Defendants had until August 29, 2006, to file these documents. *See* Order of July 5, 2006, [Doc. #39]. On August 17, 2006, the DOC Defendants filed a Special Report and a Motion to Dismiss. *See* Doc. ##51, 52.

When a defendant files a motion to dismiss, Rule 12 of the Federal Rules of Civil Procedure alters the defendant's deadline for filing an answer. If the motion to dismiss is denied, the responsive pleading is due within ten days after the notice of the court's action, unless the court sets a different time. Fed.R.Civ.P. 12(a)(4). In this case, the DOC

Defendants' first Motion to Dismiss was denied in part on March 20, 2007.  *See* Doc. #72.

Under Rule 12, the DOC Defendants' answer would have been due on March 30, 2007.  On

March 29, 2007, however, this Court entered an order establishing new deadlines.  The Order

moved the DOC Defendants' deadline for filing an answer to April 19, 2007.  *See* Doc. #76.

The DOC Defendants filed their answer to Plaintiff's Second Amended Complaint on April

9, 2007, well before the court-established deadline.  Plaintiff's Motion for Default Judgment

as to the DOC Defendants should be denied.

## V.     DOC Defendants' Motion to Dismiss

On September 20, 2007, the DOC Defendants moved to dismiss Plaintiff's Second

Amended Complaint based on Plaintiff's failure to respond to their interrogatories, requests

for production, and requests for admissions.  *See* Doc. #116.  Prior to the filing of the motion

to dismiss, this Court had granted the DOC Defendants' Motion to Compel and ordered

Plaintiff to respond to the discovery requests no later than September 13, 2007.  The order

advised Plaintiff that failure to provide the required disclosures could result in imposition of

sanctions as provided by Fed.R.Civ.P. 37.  *See* Doc. #113.  One sanction available under

Rule 37 is dismissal.  Accordingly, Plaintiff had notice that his failure to respond to the DOC

Defendants' interrogatories could result in dismissal.

The DOC Defendants' Motion to Dismiss is based on Plaintiff's failure to comply

with the court order compelling Plaintiff to respond to the DOC Defendants' discovery

requests.  The DOC Defendants base their motion on Rule 41(b) which allows a defendant

to move for dismissal if a plaintiff fails to prosecute the case, fails to follow the Federal

Rules of Civil Procedure, or fails to comply with a court order. Such a dismissal operates as an adjudication on the merits. Plaintiff has failed to prosecute this case in that he has not responded to either the DOC Defendants' Motion to Dismiss or to LabCorp's Motion for Summary Judgment. He has failed to comply with the rules governing discovery, and he has failed to comply with this Court's order compelling him to respond to the DOC Defendants' discovery requests. For these reasons, it is recommended that the DOC Defendants' Motion to Dismiss be granted and that this dismissal operate as an adjudication on the merits of Plaintiff's claims against the DOC Defendants. In other words, it is recommended that claims against the DOC Defendants be dismissed with prejudice.

## VI.   <u>LabCorp's Pending Motions</u>

Defendant LabCorp has three motions pending before this Court: a motion to dismiss a party, a motion for summary judgment, and a motion to compel Plaintiff to respond to discovery requests.

First, Defendant LabCorp has moved to dismiss claims against "Remote Franchise for LabCorp (OKC Office)." *See* Doc. #85. According to Defendant LabCorp, no such entity exists. Attached to Defendant's motion is an Affidavit from Kathryn Kyle, identified as in-house counsel for Defendant LabCorp. Ms. Kyle states that "[n]o entity exists known as "Remote Franchise for LabCorp (OKC office)." Doc. #85 Ex. 1. In his Response, Plaintiff states that he had named the "Remote Franchise" to ensure that "all parties would be aware of separate LabCorp defendants each being sued individually due to unknown actual extent of involvement at that point." Response [Doc. #95] at 2. It appears that Plaintiff properly

22

named Defendant LabCorp of Burlington, North Carolina, as Defendant, and that there is no other local entity subject to suit.    Accordingly, claims against "Remote Franchise for LabCorp (OKC Office)" should be dismissed.

Defendant LabCorp has also moved for summary judgment.  In its Statement of Undisputed Facts, Defendant LabCorp outlines its involvement in collecting genetic material from Plaintiff and performing the paternity test.  On August 19, 2005, Defendant LabCorp received a written request from the DHS to perform the paternity test on Plaintiff.  The Court Minute signed by a DHS administrative law judge was attached to the request.   On August 22, 2005, Defendant LabCorp sent a specimen request form to Specimen Specialists, Inc. (SSI), requesting that SSI, an independent company neither owned nor controlled by Defendant LabCorp, arrange for the collection of genetic material from Plaintiff.   On September 3, 2005, Defendant LabCorp received the specimens collected by Defendant McNutt, who is not an employee of LabCorp, along with a form indicating that Plaintiff had consented to the collection. On September 13, 2005, Defendant LabCorp reported the results of the paternity test to DHS.  *See* Defendant LabCorp's Motion for Summary Judgment [Doc. #103] at 2-3.[15]

Plaintiff has not responded to Defendant LabCorp's Motion for Summary Judgment. Under this Court's local rules, "[a]ll material facts set forth in the statement of material facts

---

[15]Labcorp's Statement of Undisputed Facts incorrectly refers to the year "2006" in reciting the dates of the relevant actions taken, but it is undisputed that the incident took place in 2005, as shown by the evidence attached to the motion and affidavit, Plaintiff's amended complaint and throughout the record of this case.  The facts recited by Defendant LabCorp are supported by appropriate exhibits and affidavits attached to the motion.

of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party." LCvR56.1(c). Accordingly, the facts set forth by Defendant LabCorp are deemed admitted for the purposes of this motion.

Based on these undisputed facts, Defendant LabCorp is entitled to summary judgment. It is apparent that none of Defendant LabCorp's employees personally participated in the collection of genetic material from Plaintiff, and therefore, Defendant LabCorp is in no way responsible for the manner and procedure used by Defendant McNutt to collect the genetic material.[16] Moreover, as discussed *supra* at 11-18, Defendant McNutt's collection of genetic material did not violate the Fourth Amendment.

In Count 11, Plaintiff also challenges Defendant LabCorp's reporting of the results of the paternity test to the DHS. Plaintiff claims that his DNA profile "is protected by the Constitution of the United States as his individual property." *See* Second Amended Complaint at 12. This Court liberally construes this claim as one based on deprivation of a property interest without due process of law. As such, this claim must fail. Assuming that Plaintiff possessed a property interest in his DNA profile, the profile was obtained from genetic material gathered pursuant to a court order. Plaintiff does not challenge the administrative law judge's determination that Plaintiff be required to submit to a paternity

---

[16]*See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (supervisor status insufficient by itself to support liability under section 1983; rather, personal participation of defendant is essential).

test.   Therefore, Defendant LabCorp's reporting the results of the paternity test did not deprive Plaintiff of a property interest without due process of law.   To the extent that Plaintiff is alleging that Defendant LabCorp violated other unspecified state or federal statutes, those claims do not rise to the level of a constitutional violation.

It is recommended that the Motion for Summary Judgment of Defendant LabCorp be granted.   In light of this recommendation, it is further recommended that Defendant LabCorp's motion to compel be denied as moot.

## RECOMMENDATION

It is recommended that Plaintiff's Motion for Summary Judgment /Motion for Default Judgment against Defendant McNutt [Doc. #87] be denied.   It is further recommended that summary judgment be granted *sua sponte* to Defendant McNutt as to Plaintiff's constitutional claims against her and that Plaintiff's state law claims against Defendant McNutt be dismissed without prejudice.

It is recommended that Plaintiff's Motion for Default Judgment/Motion for Summary Judgment as to the DOC Defendants [Doc. #88] be denied.   It is further recommended that the Motion to Dismiss submitted by the DOC Defendants [Doc. #116] be granted and that the claims against them be dismissed with prejudice.

It is recommended that Defendant LabCorp's Motion to Dismiss Claims against Non-Existent Entity [Doc. #85] be granted.   It is further recommended that Defendant LabCorp's Motion for Summary Judgment [Doc. #103] be granted.   Finally, if this Report and

Recommendation is adopted, it is recommended that Defendant LabCorp's Motion to Compel [Doc. #120] be denied as moot.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any objections must be filed with the Clerk of the District Court by February 28, 2008.  *See* LCvR72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation does not terminate the referral by the District Judge in this matter.

ENTERED this 8th day of February, 2008.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE